**IN THE UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | |
|---|---|
| **SHELIA FINNEY** | * |
| 625 Wellington Circle | * |
| Salisbury, MD 21801 | * |
| | * |
|     Plaintiff, | * |
| | * |
|     vs. | * |
| | * |
| **MARYLAND DEPARTMENT OF** | * |
| TRANSPORTATION, | * |
| (Motor Vehicle Administration) | *    Case No.: _____ |
| 6601 Ritchie Highway NE | * |
| Glen Burnie, MD 21062 | * |
| | * |
|     Serve on: Resident Agent: | * |
|     Attorney General of Maryland | * |
|     200 St. Paul Placed | * |
|     Baltimore, Maryland 21202 | * |
| | * |
|     Defendant | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT & JURY DEMAND

**NOW COMES**, plaintiff Shelia Finney, by and through her undersigned attorneys George A. Rose, Esquire, and Rose Law Firm, LLC, and sues the Maryland Department of Transportation for disability discrimination and in support of her cause of action state:

## I.      PRELIMINARY STATEMENT

1.     This is action for declaratory, injunctive, monetary and other appropriate relief against the Maryland Department of Transportation. The plaintiff, Ms. Shelia Finney, seeks to redress intentional violations by defendant of rights secured to her by the laws of the United States and the State of Maryland.  This action arises under, Title I of the Americans with Disabilities Act,

as amended, 42 U.S.C.A §§ 12101 et seq. ("ADA"), and Title 20 of Maryland's State Government Article ("Title 20").

## II.     PARTIES

2.      At all times relevant hereto, plaintiff Ms. Shelia Finney (hereinafter "Ms. Finney" or "Plaintiff") is a person residing at 625 Wellington Circle, Salisbury, MD 21801, and has been a resident of the State of Maryland for her entire life.

3.      Defendant Maryland Department of Transportation (hereinafter "Defendant MVA") is now and at all times pertinent hereto, an executive agency of the State of Maryland.

4.      At all times pertinent hereto, Defendant MVA, by and through its actual and/or apparent agents, servants, and/or employees, owned, operated, and supervised the Motor Vehicle Administration.

## III.     JURISDICTION

5.      Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, 42 U.S.C. § 12117, and 29 U.S.C. § 1132(e), all of which provide for original jurisdiction of plaintiff's claims arising under the laws of the United States and over actions to secure equitable and other relief.

6.      This Court has jurisdiction over Ms. Finney's claims under the statutory laws of the State of Maryland pursuant to this Court's supplemental jurisdiction as codified at 28 U.S.C. § 1367.

## IV.     VENUE

7.      Venue is proper in this district under 28 U.S.C. *§1391(a)(2),* and *§1391(b)(2)* because Defendant MVA is located in this district.

## V.      EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.      On or about February 2, 2017, Ms. Finney filed a Charge of Discrimination against Defendant MVA with the U.S. Equal Employment Opportunity Commission (EEOC), and or the Maryland Commission on Civil Rights (MCCR) EEOC #: 12F-2011-00323; MCCR # 1702-0102. On or about June 15, 2017, Ms. Finney filed an Amended Charge of Discrimination. On or about November 28, 2017, Ms. Finney requested MCCR to issue Ms. Finney a right to sue letter.  More than one hundred and eight (180) days has passed since Ms. Finney initially filed the above Charge of Discrimination and pursuant to MCCR/EEOC regulations, Ms. Finney is entitled to obtain a right to sue letter.  Ms. Finney has, therefore, exhausted her administrative remedies and has complied with all conditions precedent to maintaining this action.

## VI.      FACTUAL ALLEGATIONS PERTINENT TO ALL COUNTS

9.      On or about June 1986, Defendant MVA hired Ms. Finney as a customer service representative or title and licensing clerk at the Defendant MVA's Salisbury location. The duties and responsibilities of a Title and Licensing Clerk II involve "titling and registering vehicles, licensing and monitoring drivers, issuing identification cards, licensing and regulating vehicle related businesses, enforcing insurance and vehicle emissions inspections laws, investigating for non-compliance with motor vehicles laws and regulations and other customer support function." As a title and licensing clerk, Ms. Finney was assigned to work at  a customer service counter where she performed her duties.

10.      On or about November 21, 1994, Ms. Finney was involved in a fatal motor vehicle accident in which Ms. Finney was found unresponsive on the scene; she had to be cut out of the vehicle and was in a coma for the preceding week.  As a result of the accident, Ms. Finney was diagnosed with: (1), "traumatic brain injury with underlying diffuse axonal injury causing upper

motor neuron problems in the left upper extremity with possible anoxic injury as well; and (2), Left brachial plexus injury with both neuropraxis and axonal components; however, peripheral injury appears to be to have a good prognosis based on motor conduction." The injures resulted in Ms. Finney having documented disabilities from the Traumatic Brain Injury, pertaining to memory problems, upper extremity weakness, and a decline in coordination – all of which Ms. Finney has been treated for by her health care providers since 1994.

11.     Approximately nine (9) months after the 1994 accident, Ms. Finney returned to work with Defendant MVA and assumed her full duties and responsibilities, without any accommodation. However, after about six (6) months, Ms. Finney's requested reasonable accommodation to optimally performed her duties. The reasonable accommodation request was granted by Defendant MVA. The reasonable accommodation granted to Ms. Finney was an assignment to work in the dealer room, also called the "backroom" or "the office", at Defendant MVA's Salisbury branch office. Here, Ms. Finney was assigned to work at a desk, in an office setting, handling the Dealer Log, processing mail and answering the telephones. At all times of Ms. Finney's employment at the Defendant MVA, Ms. Finney performed her duties satisfactorily and up to the legitimate expectations of her employer, Defendant MVA, with or without the reasonable accommodation.

12.     Beginning in the year 2015, Ms. Finney's direct supervisor, Ms. Deborah Taylor, began suggesting, encouraging and prodding Ms. Finney to retire. Ms. Taylor claimed she was prodding Ms. Finney to retire because other staff were becoming disgruntled because only Ms. Finney was "working in the office," and other staff was asking "why is she special", in reference to Ms. Finney working in the office. Sometime thereafter, Ms. Taylor instructed that Ms. Finney receive training to work at the customer service counters, to "fill-in" as necessary.

13.     Sometime in June of 2016, Ms. Taylor informed Ms. Finney that Ms. Taylor's new supervisor, Mr. Tray Whitehead, gave a directive that no one, including Ms. Finney, will be allowed to work in the dealer room anymore. At that time, Ms. Finney protested against the directive and stated that it was targeting Ms. Finney's due to Ms. Finney's disability and the reasonable accommodation given to Ms. Finney to work in the dealer room.

14.     On or about June 30, 2016, Ms. Finney interacted with a customer, who became irate and demanded to speak to Ms. Finney's supervisor. Ms. Bradway was the available supervisor, and Ms. Finney relayed the customer's request to Ms. Bradway. Ms. Bradway refused to talk to the customer and insisted that Ms. Finney relay information to the customer. The customer insisted on speaking with Ms. Bradway. In response, Ms. Bradway berated Ms. Finney's handling of the dealer room and remarked that Evangeline Pastor was "of more use" to Ms. Bradway, than Ms. Finney.

15.     On or about July 11, 2016, Ms. Finney returned to work from a week's vacation and was informed by Ms. Bradway of a change in Ms. Finney's job duties and assignments that were effective immediately. The change removed Ms. Finney from working in the dealer room to working at a front customer service counter ("Station 2"). This change in Ms. Finney's job duties and assignment effectively ended the reasonable accommodation granted to Ms. Finney by Defendant MVA.

16.     At Station 2, Ms. Finney had to stand ninety percent (90%) of the time while working. Ms. Finney has pins and rods in her right ankle and the prolong standing causes swelling to her foot. The chair at the counter was very heavy and hard to move. It did not roll freely. Ms. Finney was not strong enough to keep pushing the chair to force movement. Ms. Finney had to constantly use her non-dominant right hand, (Ms. Finney is left handed), to peel the back of sticker

from decals with one hand. Ms. Finney has no dexterity in her right hand. Ms. Finney has nerve damage and arthritis in right hand.  By midday, her hand is fatigued and weak from the repetitive movement. Ms. Finney could not keep up with the time required for which duties must be performed at the counter. The duties involves multitasking of 7-8 different functions, and monitoring two (2) computers, two located to the left and right sides of Ms. Finney's counter. However, Ms. Finney could only type with one finger and one hand.  Due to degenerative disease and bone spurs in her neck, the constant movement of her neck from left to right, working with the two computers causes neck & back pain.

17.     On or about July 21, 2016, Ms. Finney contacted her labor union to initiate a grievance against the decision to take away her reasonable accommodation. Ms. Finney alleged that the decision to remove her from the dealer room was discriminatory and violated her right to reasonable accommodation.   Ms. Finney also reported Ms. Taylor and Ms. Bradway to Ms. Finney's Union Representative, Ms. Mildred Womble, and Mr. Jack Hughes, Union Representative for AFSME.

18.     On or about August 2, 2016, Ms. Finney received a reprimand from Ms. Taylor and Ms. Bradway. The reprimand alleged that Ms. Finney failed to secure her work station properly. Ms. Finney protested this action as retaliation and discriminatory because at least two of Ms. Finney's Caucasian coworkers and counterparts, Ms. Jeannine Snyder and Ms. Brenda Carrie, left their workstations unsecured but were not issued with a reprimand. Ms. Taylor knew about the instances when Ms. Jeannine Snyder and Ms. Brenda Carrie, left their workstations unsecure.

19.     On or about August 1, 2016, Ms. Finney submitted a formal request for reasonable accommodation to her employer. Therein, Ms. Finney attached a cover letter, the completed reasonable accommodation request form that she needed to fill out for the MVA, and a letter from

her physician, Mandip Parmar, M.D., Ph.D., related to Ms. Finney's disability.  In the cover letter, Ms. Finney stated: "Please find attached a completed State of Maryland reasonable accommodation request [form] and a letter from Physician Dr. [Mandip] Parmar…. Please consider my request to return to the Dealer Room." Additionally, in the reasonable accommodation request form filled out by Ms. Finney, she stated,  "…My feet should be supported not dangled. I can work at my pace in [the] back room Deal Log. That is where I was assigned [My] job duties change [from one of my supervisors] by Deborah Taylor…" Dr. Mandip Parmar, M.D., PhD's August 1, 2016 note states as follows:  "We have been treating Sheila Finney for her past accident injuries including traumatic brain injury, cervical and lumbar pain, and upper extremity pain and weakness… I examined Ms. Finney on August 1, 2016; we discussed her workplace and job duties. Ms. Finney should not stand or walk greater than 20 minutes without rest. Her cervical and upper extremity pain limits her pushing, pulling and carrying to less than 20 pounds on an occasional basis. She should not have any overhead activities. When she is sitting, she should be allowed to stretch as needed. Her chair should have foot rest and lumbar support. In my medical opinion, Ms. Finney's injuries are permanent…"

20.     On or about August 4, 2016, Ms. Carla Loving, the Lead EEO Officer in the MVA's Office of Civil Rights and Fair Practices, responded to Ms. Finney's August 2, 2016 correspondence referenced above as follows, starting in part that "the Office of Civil Rights and Fair Practices has approved your request for a modification of your job duties for a period of 6 months (from August 5, 2016 through February 4, 2017). Should your condition change before this date, please let us know…"

21.     On August 25, 2016, Dr. Parmar again provided additional medical information in support of Ms. Finney's request for reasonable accommodation. Therein, it stated: "…We have

7

been treating Sheila Finney from November 1994 through present for her injuries secondary to a motor vehicle accident. The accident caused multiple permanent injuries: 1. TBI – Traumatic Brain Injury causes problems with memory and concentration. Ms. Finney is capable of performing most mental tasks; however, she requires additional time due to problems with focus and memory. 2. Left brachial plexus injury which caused permanent weakness and problems of coordination of left upper extremity. Ms. Finney must perform computer and manual work with essentially only her right upper limb. Ms. Finney has worked hard since 1994 to overcome her injuries. With reasonable accommodations she has been gainfully employed. I believe she can continue work if her work requirements are similar to requirements she had prior to this year. In my medical opinion, Ms. Finney's injuries are permanent…"

22.     Although Ms. Finney's supervisors, Ms. Taylor and Ms. Bradway, were aware that Ms. Finney's request for renewal of her reasonable accommodation was approved until February 4, 2017, they refused to provide Ms. Finney with the reasonable accommodation and kept Ms. Finney working at Station 2. On one occasion when Ms. Finney showed Ms. Bradway the communication from Carla Loving, Ms. Bradway responded: "I can't do nothing about it."  The working conditions at Station 2 exacerbated Ms. Finney's mental and physical disabilities, resulting in Ms. Finney taking frequent sick leave.

23.     Because Ms. Finney's supervisor refused to reinstate Ms. Finney's approved reasonable accommodation request, and the change in work assignment was adversely affecting the health and wellbeing of Ms. Finney and preventing Ms. Finney from performing her duties as a customer service representative, Ms. Finney was forced to apply for retirement from her job. Consequently, Ms. Finney was forced into retirement in October 2016.

24.     Although Ms. Taylor claimed that she was directed by superiors that no one would be allowed to work in the backroom, Ms. Finney observed a few of her co-workers working in the backroom while Ms. Finney suffered trying to perform her duties on the customer service counter.

25.     Because of the circumstances stated above, in October 2016, Ms. Finney was constructively discharged from her job  at the MVA, and instead of waiting to be forced out of her job, she retired from her job at the MVA. In fear of any additional retaliation against Ms. Finney, Ms. Finney waited to file her claims against the MVA until the process for Ms. Finney's application for retirement was complete (Ms. Finney filed her original claim against the MVA on February 2, 2017).

26.     On February 17, 2017, Ms. Finney's physician, Dr. Parmar, submitted a letter related to Ms. Finney's disability to the MVA. Therein, Dr. Parmer stated, "…We have been treating Sheila Finney for TBI, memory problems, cervical pain and left upper extremity weakness following a MVA in 1994. Ms. Finney worked very hard to overcome her injuries, She [ Ms. Finney], was able to work full time, with very modest work adjustments until 2016. In 2016, Ms. Finney's employer, [ the MVA] stopped the adjustments she required due to her injuries. Because of her memory problems and upper extremity weakness with decline in coordination, Ms. Finney was unable to perform her new work duties. Ms. Finney's memory problems and upper extremity injuries are permanent…"

### VII.   COUNT I
### (Disability Discrimination in Violation of the ADA)

27.     Ms. Finney is disabled, as defined by the Americans with Disabilities Act (ADA). Ms. Finney suffers from Traumatic Brain Injury, which "causes problems with memory and concentration. Ms. Finney is capable of performing most mental tasks; however, she requires additional time due to problems with focus and memory." Ms. Finney also suffers from "Left

brachial plexus injury which caused permanent weakness and problems of coordination of left upper extremity. Ms. Finney must perform computer and manual work with essentially only her right upper limb." Ms. Finney is otherwise qualified to perform the essential functions of her job as a Licensing clerk.

28.    Ms. Finney is an employee within the meaning of the ADA.

29.    Defendant MVA violated the ADA by intentionally discriminating against plaintiff on the basis of her disability. Defendant MVA's discriminatory acts include taking away the Ms. Finney's assignment in the dealer room, reprimanding  Ms. Finney and constructively discharging Ms. Finney.

30.    As a direct and proximate result of Defendant MVAs' acts and/or omissions, Ms. Finney lost wages and benefits, and suffered damages at the hands of Defendant MVA, including, but not limited to, humiliation, embarrassment, and unnecessary stress and anxiety, emotional distress, and mental anguish, for which Defendant MVA is required by law to provide a remedy.

## VIII.   COUNT TWO
### (Failure to Accommodate in Violation of the ADA)

31.    Ms. Finney incorporates all preceding and following paragraphs hereto, as though fully set forth herein.

32.    Defendant MVA discriminated against Ms. Finney by changing Ms. Finney's work assignment from the dealer room to Station 2. Defendant MVA knows that Ms. Finney could not perform the customer service representative duties at Station  2, because of her disabilities, yet Ms. Taylor changed Ms. Finney's assignment from the dealer room where Ms. Finney performed above function expectation. Ms. Finney's doctor provided a medical note to Defendant MVA, stating: "Ms. Finney is capable of performing most mental tasks; however, she requires additional time

due to problems with focus and memory. 2. Left brachial plexus injury which caused permanent weakness and problems of coordination of left upper extremity. Ms. Finney must perform computer and manual work with essentially only her right upper limb. Ms. Finney has worked hard since 1994 to overcome her injuries. With reasonable accommodations she has been gainfully employed. I believe she can continue work if her work requirements are similar to requirements she had prior to this year." Although plaintiff requested these accommodations, defendant did not make them.

33.     Although on or about August 4, 2016 Ms. Carla Loving approved extension of Ms. Finney's reasonable accommodation to work in the dealer room request until February 2017, Ms. Finney's supervisors, Ms. Taylor and Ms. Bradway refused to implement the approved reasonable accommodation and kept Ms. Finney on Station 2.  Defendant MVA was aware of Ms. Taylor's and Ms. Bradway's refusal to provide the approved reasonable accommodation.

34.     Ms. Finney's medical documentation shows that Ms. Finney, at all times pertinent hereto, was qualified to perform the essential functions of her job with or without the reasonable accommodation(s).

35.     As a direct and proximate result of Defendant MVAs' acts and/or omissions, Ms. Finney lost wages and benefits as well suffered damages, but not limited to, humiliation, embarrassment, and unnecessary stress and anxiety, emotional distress, and mental anguish, for which the Defendant MVA is required by law to provide a remedy.

## IX.     COUNT THREE
### (Disability Discrimination in Violation of Title 20)

36.     Ms. Finney incorporates all preceding and following paragraphs hereto, as though fully set forth herein.

37.     Defendant MVA violated Title 20 by intentionally discriminating against plaintiff on the basis of her disability.  Defendant MVA's discriminatory acts include the termination of Ms. Finney's employment.

38.     As a direct and proximate result of Defendant MVA's acts and/or omissions, Ms. Finney lost wages and benefits as well as suffered damages including, but not limited to, humiliation, embarrassment, and unnecessary stress and anxiety, emotional distress, and mental anguish, for which the Defendant MVA is required by law to provide a remedy.

## X.     COUNT FOUR
### (Failure to Provide Reasonable Accommodation in Violation of Title 20)

39.     Ms. Finney incorporates all preceding and following paragraphs hereto, as though fully set forth herein.

40.     Defendant MVA violated Title 20 by failing to provide reasonable accommodation of allowing Ms. Finney to work in the dealer room. However, Defendant MVA did not make these accommodations for Ms. Finney, when such reasonable accommodations would not cause financial or undue hardship on the Defendant MVA.

41.     As a direct and proximate result of Defendant MVA's acts and/or omissions, Ms. Finney lost wages and benefits as well as suffered damages including, but not limited to, humiliation, embarrassment, and unnecessary stress and anxiety, emotional distress, and mental anguish, for which the Defendant MVA is required by law to provide a remedy.

## XI.     PRAYER FOR RELIEF

WHEREFORE, Ms. Finney prays that this court enter judgment in Ms. Finney's favor and grant Ms. Finney the maximum relief allowed by law, including, but not limited to:

(a) compensatory damages of One Million Dollars ($1,000,000.00);

(b) back pay and front pay;

(c)  a declaration that Defendant MVA's actions violated Title 20  of the ADA; and

(d)  attorney's fees, costs both pre-judgment and post-judgment interest, and any such

other relief as are just and equitable under the circumstances.

## XII.    **JURY DEMAND**

Ms. Finney requests a trial by jury on all issues and counts stated herein.


Respectfully Submitted,

*/s/ George Rose*

_____
George A. Rose, Esquire #26086
Rose Law Firm, LLC
200 E. Lexington Street, Suite 1305
Baltimore, MD  21202
Telephone: 410-727-7555
Facsimile: 443-320-0962
Email: grose@roselawfirm.net

Attorneys for *Plaintiff Shelia Finney*